# FUNG DAI KIM AH LEONG, IN HER OWN PROPER PERSON, AND BY AMOY ZEN, HER NEXT FRIEND, *v.* LAU AH LEONG.

## No. 1594.

RESERVED QUESTIONS FROM CIRCUIT COURT FIRST CIRCUIT. HON. R. J. O'BRIEN, JUDGE.

ARGUED JUNE 1, 1925.                    DECIDED AUGUST 26, 1925.

PETERS, C. J., PERRY AND LINDSAY, JJ.

MARRIAGE—*requisite of valid marriage.*

An essential element of a valid marriage is the mutual undertaking and consent of the parties to be and become husband and wife.

EQUITY—*bill—multifariousness.*

To support an objection of multifariousness to a bill in equity, not alone must it appear that there are different grounds of suit alleged in the bill but each ground must be sufficient as stated to sustain a bill.

JOINT ADVENTURE—*title to property.*

Where property is acquired as the result of a joint adventure the one holding title thereto will be regarded as a trustee for his associates.

EQUITY—*jurisdiction in—suits between parties to joint adventures.*

The existence of a fiduciary or trust relationship and the necessity of an accounting where the nature of the latter is such that it cannot be properly adjusted and settled in an action at law are sufficient to confer jurisdiction upon circuit judges in equity under the provisions of R. L. 1925, s. 2463.

OPINION OF THE COURT BY PETERS, C. J.

This is a suit in equity for separate maintenance, or, in the alternative should the court determine that the petitioner was not the lawfully wedded wife of the respondent, to declare the respondent the trustee for the petitioner in the amount of a "fair share" of the fortune,

assets and accumulations held by the respondent representing their joint endeavors. The respondent demurred and the following questions raised thereunder, including all the grounds of demurrer, were reserved for the opinion of this court:

"1.  Should the amended demurrer to the petition be sustained upon any of the grounds stated in said demurrer?

"2.  Does the petition state a cause of action entitling petitioner to the relief prayed for, or any equitable relief?

"3.  Is there a misjoinder of parties plaintiff?

"4.  Is there a misjoinder of causes of action?

"5.  Is the petition multifarious?

"6.  Is said petition vague, uncertain and insufficient in that it does not show whether the petitioner purports to sue directly as an unmarried woman or through a next friend as a married woman?

"7.  Has petitioner a speedy, adequate and complete remedy at law?"

Equity has jurisdiction to grant separate maintenance to a wife. (*Dole* v. *Gear*, 14 Haw. 554.) The exercise of this jurisdiction is in effect the coercive enforcement of the statutory obligation of the husband to support and maintain his wife. The right to separate maintenance is predicated upon the marriage relation. To invoke the equity jurisdiction to grant separate maintenance it must therefore appear that the parties sustained to each other the legal relation of husband and wife. The petitioner in her bill alleges that she was married to the respondent in Hawaii in 1884 according to Chinese custom and rites recognized by immemorial usage. (Both parties are Chinese.) Whether a license for that purpose was duly obtained from the agent appointed to grant licenses to marry pursuant to the provisions of Cp. L. 1884, s. 1283, does not affirmatively appear. Petitioner alleges in her bill that she is unable to determine whether or not a license to marry was issued to the respondent

and/or to her in connection with the marriage ceremony. This is in effect an admission that no marriage license was obtained. This bill also contains general allegations of subsequent acts of the parties evidently intended by the pleader to imply a marriage between the petitioner and respondent, such as that the petitioner presided for a long period of years over the respondent's household as his wife; that she was recognized as such by the respondent, his household and his friends, visitors and associates; that the respondent referred to her as "mamma;" that she joined with the respondent as his wife at his request in innumerable conveyances of land by way of release of dower in the subject-matter of the conveyances; that the respondent plead guilty to an indictment charging him with unlawful cohabitation and entered a plea of *nolo contendere* to an indictment for bigamy in which the petitioner was named as one of the wives of the respondent with whom he had intermarried. It also appears from the bill that fourteen children were born to petitioner and respondent, all of whom but one at the time of the filing of the bill had attained majority.

To determine whether the petitioner and respondent were ever legally married we need go no further than to inquire whether the bill either expressly or by implication alleges one of the essential elements of a good and valid marriage, that is, a mutual undertaking and consent of the parties to be and become husband and wife. "\* \* \* it is of the essence of a contract, and certainly of a marriage contract, that there should be the consent of mind of both parties to it, freely and voluntarily and truly expressed when the marriage ceremony is performed. It is the *sine qua non* of this ceremony; the only question being, Does each party take the other to be his or her wife or husband?" *Puuku* v.

*Kaleleku,* 8 Haw. 77, 80. "Without mutual consent there can be no marriage. It is generally said that the consent must be *per verba de praesenti* or *per verba de futuro cum copula.*" *Republic* v. *Li Shee,* 12 Haw. 329, 331. What the Chinese custom was or the Chinese rites were that were recognized by immemorial usage and according and pursuant to which these parties were married or by whom such custom and rites were recognized by immemorial usage does not appear. Certain phases of the marriage ceremony are referred to in the bill, such as the prior presence of an agent of the respondent "duly constituted for that purpose, who, according to the custom of the Chinese, arranged a marriage" between petitioner and respondent; the participation in "ceremonies and rites recognized immemorially by the Chinese as sanctioning the relationship of marriage;" the delivery by the petitioner to the respondent of "Chinese marriage papers;" "a round of festivities under the supervision and direction of respondent * * * in recognition of the nuptial ceremonies between said petitioner and said respondent;" the contribution of money to the petitioner "according to Chinese custom by guests, friends and relatives." These references are no more illuminating than the general allegations upon the subject. Moreover, the subsequent acts of the parties might be entirely consistent with their conception of the status of a party to a polygamous marriage, unlawful in Hawaii though consummated according to and recognized as lawful by Chinese custom and rites. Pleadings are construed against the pleader. Their status, however, is to be determined not by Chinese custom and rites or their conception of the effect of such custom and rites but by the law of Hawaii as it existed at the time of their alleged marriage, and in order to sustain the general allegation of a marriage between the parties to the

action according to Chinese custom and rites it was incumbent upon petitioner to further show by appropriate allegations what the Chinese custom and rites were and that they included the voluntary agreement and consent of the parties either express or implied to be and become husband and wife.

The bill is fatally defective in failing to show a valid and existing marriage between the petitioner and the respondent. In the absence of such showing the bill fails to state facts sufficient to entitle the petitioner to relief by way of separate maintenance.

Under that state of the pleadings, instead of the bill's having a double aspect as contended by petitioner, or being multifarious as urged by the respondent, it states but one cause of action, that is, to declare a trust. To support an objection of multifariousness to a bill in equity not alone must it appear that there are different grounds of suit alleged in the bill but each ground must be sufficient, as stated, to sustain the bill. (*Brown* v. *Guarantee Trust Co.,* 128 U. S. 403; *Guano Co.* v. *Heatherly,* 18 S. E. (W. Va.) 611.)

In support of her claim that the respondent should be declared a trustee for the petitioner in the amount of a fair share of the fortune, assets and accumulations held by him representing their joint endeavors petitioner alleges in substance that at the time of their alleged marriage and since and while the petitioner and respondent were living together as husband and wife it was agreed and understood between them that in consideration of her contribution of certain money to a common fund and her labor and assistance in the operation of the different business enterprises in which he was and should thereafter from time to time be engaged the property and accumulations resulting from their joint endeavors should be the joint property of petitioner and

respondent and held and used for their common benefit and the benefit of their family. She also alleges that the legal title to this property and these accumulations stands in the name of the respondent and that notwithstanding their said agreement the respondent threatens to give such property and accumulations to others in so far as he is able so to do; that to that end and purpose he has prepared articles of incorporation incorporating all of his business under the laws of the Territory of Hawaii and intends to convey the same to such corporation when formed; that he is wasting his substance upon other women and endangering the rights of the petitioner and the children of petitioner and respondent.

The contract as alleged seems to be free from any illegal consideration. By its terms petitioner and respondent in effect entered into a joint adventure for the mutual benefit of themselves and their family. The relation thus created may be characterized as one of *quasi* partnership. (*O'Hara* v. *Harman,* 43 N. Y. S. 556, 558; *Marston* v. *Gould,* 69 N. Y. 220, 224.) The only incident of that relation, however, with which we are concerned is the legal status of the respondent in respect to property now held by him which is the result of the joint endeavors of himself and the petitioner. The respondent unquestionably took the legal title to this property in trust for the uses and purposes specified and provided by the contract. To this extent the respondent is the trustee and the petitioner a *cestui que trust.* They have a joint interest in the property. The respondent holds the legal title. But the rights of the petitioner are as valid in equity as those of the respondent are at law. In the case of *Seymour* v. *Freer,* 8 Wall. (U. S.) 202, 213, plaintiff's testator entered into a joint adventure with one Price in the purchase of lands, the

legal title to which was to be taken in the name of the former. The court defined the status of the holder of the legal title as follows: "We think Seymour took the legal title in trust for the purposes specified. A trust is where there are rights, titles and interests in property distinct from the legal ownership. In such cases the legal title, in the eye of the law, carries with it, to the holder, absolute dominion; but behind it lie beneficial rights and interests in the same property belonging to another. These rights, to the extent to which they exist, are a charge upon the property, and constitute an equity which a court of equity will protect and enforce whenever its aid for that purpose is properly invoked. Interests in real estate, purely contingent, may be made the subjects of contract and equitable cognizance as between the proper parties. The object of the trust here was to sell the property within the time limited, and, after deducting from the proceeds the outlay, with interest and taxes, to pay over to Price one-half of the residue. To this extent Seymour was a trustee, and Price the *cestui que trust.* They had a joint interest in the property. Seymour held the legal title, but the rights of Price were as valid in equity as those of Seymour were at law." The existence of a fiduciary or trust relationship is a ground of equity jurisdiction. (2 Story, Eq. Jur. (14 ed.) §1300 et seq.; *Marvin* v. *Brooks,* 94 N. Y. 71, 80; *Kawananakoa* v. *Puahi,* 14 Haw. 72, 76.) Such jurisdiction is specifically conferred upon circuit judges. (R. L. 1925, s. 2463.)

Aside from this there is additional ground of equitable relief. Lengthy and complicated accounts are involved. The joint adventure which was the result of the contract covers a period of nearly forty years. In order to determine what property the respondent now holds which is the result of the joint endeavors of the parties it will

be necessary to take an account of the business activities of the respondent during that period. The flexible procedure of equity and the special machinery possessed by equity courts for dealing with complicated interests and long and complicated accounts are not available at law. (2 Story, Eq. Jur. (14 ed.) §§ 582, 589.) Jurisdiction of suits upon accounts, where the nature of the account is such that it cannot be properly adjusted and settled in an action at law, is conferred by statute upon circuit judges. (R. L. 1925, s. 2463.)

The respondent contends that the petitioner has a plain, adequate and complete remedy at law. That the petitioner might at her option bring assumpsit for a breach by the respondent of the contract alleged is immaterial. Considering the bill merely from the standpoint of one to enforce a trust the remedies at law and in equity are concurrent and petitioner may at her option pursue such remedy as she deems best suited to her purposes. "An action at law, sounding in damages, may, undoubtedly, be maintained in such cases for the breach of an express agreement by the trustee, but this in nowise affects the right to proceed in equity to enforce the trust and lien created by the contract. They are concurrent remedies. Either, which is preferred, may be selected. The remedy in equity is the better one. The right to resort to it, under the circumstances of this case, admits of no doubt, either upon principle or authority." *Seymour* v. *Freer, supra,* p. 215. Considering the bill from the standpoint of the necessity of an accounting assumpsit at law would be obviously inadequate. Mere comparison of the two remedies and the relief afforded by each demonstrates the shortcomings of assumpsit. Circuit courts at law have no procedure or machinery suitable for dealing with or taking long and complicated accounts. The existence of a remedy

at law does not deprive equity of such jurisdiction unless such remedy be adequate, that is, clear and complete— as practicable and efficient to the ends of justice and its prompt administration as the remedy in equity. (16 Cyc., title "Equity," p. 41.)

The foregoing disposes of all the questions reserved except that as to the misjoinder of parties plaintiff. In that regard it is sufficient to say that the petitioner having sued individually it is immaterial in respect to that portion of her bill which asks for the declaration and enforcement of a trust that she also appears by a next friend. Such appearance may be considered as mere surplusage.

Questions 1, 3, 4, 5, 6 and 7 are answered in the negative; question 2 in the affirmative.

*Marguerite K. Ashford* (*Thompson, Cathcart & Beebe* with her on the brief) for petitioner.

*A. G. M. Robertson* (*Harry Irwin* and *Robertson & Castle* on the briefs) for respondent.